THOMAS L. PARKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parker v. Commissioner
Docket No. 10280-77.
United States Tax Court
T.C. Memo 1983-87; 1983 Tax Ct. Memo LEXIS 705; 45 T.C.M. (CCH) 727; T.C.M. (RIA) 83087; February 8, 1983. *705 Alan R. Harter, for the petitioner. Ronald D. Dalrymple and Dianne I. Crosby, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of conducting the hearing and ruling on respondent's Motion for Summary Judgment filed herein.After a review of the record, we agree with and adopt his opinion which is set forth below. [1]
*706 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment filed on November 30, 1982, pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2]
Respondent, in his notice of deficiency issued to petitioner on September 28, 1977 determined a deficiency in petitioner's Federal income tax for the taxable calendar years 1972 and 1973 in the respective amounts of $1,202.37 and $1,361.52.The adjustments determined by respondent in his deficiency notice are for unreported tip ("toke") income received by petitioner in 1972 and 1973 in the amounts of $5,420.00 and $5,700.00, respectively. Petitioner timely filed his petition on October 7, 1977 and respondent filed his answer thereto on November 29, 1977. Thus, the pleadings are closed. Respondent's motion was filed more than 30 days after the pleadings were closed. See Rules 34, 36, 38, and 121. When respondent's good faith attempts to make arrangements with petitioner's counsel for informal consultations or communications proved unsuccessful, [3] he, *707 not desiring to rest on the pleadings alone, on August 10, 1982, served a 57 paragraph Request for Admissions on petitioner's counsel. [4] Petitioner's counsel at no time served written answers upon respondent nor did he file an original of such answers with the Court.Rule 90(c). Hence, each matter contained in respondent's request for admissions is deemed admitted and conclusively established. [5]
*708 The following findings of fact are based upon the record as a whole, the allegations of respondent's answer admitting allegations in the petition, the matters deemed admitted with respect to respondent's request for admissions, exhibits attached to respondent's motion and respondent's affidavit. FINDINGS OF FACT Petitioner resided at 3749 Territory Street, Las Vegas, Nevada on the date his petition was filed. He filed individual 1972 and 1973 Federal income tax returns with the Internal Revenue Service. During 1972 and 1973 petitioner was employed as a craps dealer and was a member of a "craps crew" at the Sands Hotel and Casino (hereinafter sometimes referred to as "the Casino") in Las Vegas, Nevada. A craps crew consisted of four dealers who manned one table. Three of the dealers worked while the other was on break on a rotational basis. The crews rotated tables periodically, to equalize the work and tokes received, between the more desirable and busier table locations and those less desirable and therefore less busy. In the course of his employment petitioner received tokes from patrons of the Casino. In accordance with house rules these tokes were routinely pooled *709 by petitioner and other craps dealers on his crew, by placing said tokes in a common toke box for his particular crew, before leaving the area of the gaming tables on a break or at the end of a shift. The total amount so pooled was divided equally at the end of each 8-hour shift among the craps dealers on that particular crew who were on duty during that 8-hour period. Under house rules some provision was made for allowing a share of the tokes for dealers who were unable to work due to illness. During 1972 and 1973 petitioner received his equal share of such pooled tokes. Petitioner, in 1972 and 1973, did not maintain a written diary, log, worksheet, or other record, made at or near the time he received tokes, which set forth the date, amount of tokes received and amounts he may have expended as gratuities to co-workers. Players (patrons) at the Casino did from time to time place bets on petitioner's behalf. Such bets remained under the control of the patron until the winnings, if any, were actually given to petitioner. The patron was free to take back the winning bet if he so desired. The Nevada State Gaming Authority regards a bet made by a patron for petitioner as a wager *710 made by and on behalf of the patron. Petitioner was forbidden from gambling or placing bets at the table he was working. Under house rules any winning bets received by petitioner were pooled and distributed. Neither petitioner nor the toke pool was required to reimburse a patron who had placed a losing bet on petitioner's behalf. In both 1972 and 1973 petitioner gambled in his individual and private capacity.He maintained no records which accurately reflected the date, amount of bets and amounts won and lost. Petitioner was paid a salary by his employer in both 1972 and 1973. The salary was in addition to the tokes he received in those years.In 1972 he was paid a salary for 235 8-hour shifts. He was paid for 8-hour shifts when he did not actually work, such shifts did not exceed 15 for 1972. [6] During 1973 he was paid a salary by his employer for 233 8-hour shifts, which included some shifts when he did not actually work, such shifts did not exceed 13 for 1973. [7] Petitioner reported the salary he received from his employer on his 1972 and 1973 returns.
*711 Petitioner is required by law to report the toke income he receives to his employer. He reported no such income to his employer for 1972 and 1973. On his 1972 and 1973 returns he reported toke income of $1,180.00 and $2,000.00, respectively. The amounts reported on his returns were based on estimates and not on any written records maintained by petitioner or any third party on his behalf. The amount of toke income received by petitioner in 1972 averaged not less than $30.00 for each 8-hour shift he actually worked and for 1973 it averaged not less than $35.00 for each 8-hour shift actually worked. Petitioner received additional toke income in 1972 and 1973 in the respective amounts of $5,420.00 and $5,700.00, which he did not report on his Federal income tax returns filed for those years. Petitioner does not have in his possession or under his control any documentary evidence to support the allegations in his petition that respondent's determinations are arbitrary.
OPINION It is well settled that tokes are not gifts but taxable income which must be included in a taxpayer's gross income. Olk v. United States,536 F.2d 876 (9th Cir. 1973); [8]Owens v. Commissioner,T.C. Memo. 1983-30; *712 Williams v. Commissioner,T.C. Memo. 1980-494. [9] It is conclusively established in this record that petitioner received unreported toke income in 1972 and 1973 in the respective amounts of $5,420 and $5,700. Petitioner's contention that respondent's determinations are arbitrary is baseless. Here, he kept no records which would accurately reflect the toke income which he received in 1972 and 1973. In such circumstance, the Commissioner may, in his notice of deficiency, make a determination based upon any reasonable method where a taxpayer refuses to produce his records or where those records are inadequately maintained. Holland v. United States,348 U.S. 121 (1954); Merritt v. Commissioner,301 F.2d 484, 486 (5th Cir. 1962); Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. in an unpublished opinion 559 F.2d 1207 (3rd Cir. 1977); Giddio v. Commissioner,54 T.C. 1530 (1970); *713 Meneguzzo v. Commissioner,43 T.C. 824 (1965). [10]
Respondent's determinations herein are presumptively correct and the burden is on petitioner to establish that they are incorrect or arbitrary. Welch v. Helvering,290 U.S. 111 (1933); Avery v. Commissioner,574 F.2d 467, 468 (9th Cir. 1978); Rule 142(a). Petitioner has totally failed to show that those determinations are incorrect or arbitrary. Rule 121(b) provides that a motion for summary judgment shall be granted if the "pleadings * * * admissions, and anyother acceptable materials,together with the affidavits * * * show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * *". [Emphasis supplied.] Here, petitioner has refused to submit any information which contradicts respondent's factual determinations.On the basis of the pleadings, those matters deemed admitted in respondent's request for admissions, the exhibits attached to respondent's motion (which *714 include the 1972 and 1973 returns and a full copy of the notice of deficiency) and respondent's affidavit, respondent has amply demonstrated to our satisfaction that there is no genuine issue as to any material fact present in this record and, thus, that respondent is entitled to a decision as a matter of law. Hence, summary judgment is a proper procedure for disposition of this case. Respondent's motion for summary judgment will be granted. An appropriate order and decision will be entered.
Footnotes
1. Since this is a pre-trial motion and there is no genuine issue of material fact, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule. The parties were afforded a full opportunity to present their views on the law at the hearing at Washington, D.C. on January 19, 1983. No appearance was made by or on behalf of petitioner nor was a response to respondent's motion filed, albeit a copy thereof and a copy of respondent's Memorandum of Points and Authorities and a copy of respondent's affidavit together with a copy of the Court's Notice of Hearing were served on petitioner's counsel by the Court on December 3, 1982. See Rule 50(c), Tax Court Rules of Practice and Procedure.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. See Odend'hal v. Commissioner,75 T.C. 400↩ (1980); Rule 90(a). 4. The original of that request was filed with the Court on August 16, 1982. Rule 90(b).↩
5. See Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978); Rules 90(c) and (e). See also McKinnon v. Commissioner,T.C. Memo. 1982-229; Knudson v. Commissioner,T.C. Memo. 1982-179; Oaks v. Commissioner,T.C. Memo. 1981-605; Wallace v. Commissioner,T.C. Memo. 1981-274; Myers v. Commissioner,T.C. Memo. 1980-549; Edelson v. Commissioner,T.C. Memo. 1979-431; Saba v. Commissioner,T.C. Memo. 1979-397; Bassett v. Commissioner,T.C. Memo. 1979-14↩.
6. The 5 shifts were not included in respondent's determination of additional toke income received by petitioner in 1972. ↩
7. The 13 shifts were likewise not included in respondent's determination of additional toke income received by petitioner in 1973.↩
8. We observe that venue on appeal of this case would lie in the United States Court of Appeals for the Ninth Circuit. ↩
9. See also, Foltz v. Commissioner,T.C. Memo. 1982-719 and Malone v. Commissioner,T.C. Memo. 1982-325↩.
10. The method used here by respondent was clearly reasonable. See Williams v. Commissioner,T.C. Memo. 1980-494↩.