JAMES AND BARBARA L. CHAPMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chapman v. Commissioner
Docket No. 7622-77.
United States Tax Court
T.C. Memo 1983-300; 1983 Tax Ct. Memo LEXIS 485; 46 T.C.M. (CCH) 283; T.C.M. (RIA) 83300; May 26, 1983. *485 Alan R. Harter, for the petitioners. Ronald D. Dalrymple and Robert T. Hollohan, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of conducting the hearing and ruling on respondent's Motion for Summary Judgment filed herein.After a review of the record, we agree with and adopt his opinion which is set forth below. [1]
*486 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment filed on March 29, 1983, pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2]
Respondent, in his notice of deficiency issued to petitioners on April 8, 1977, determined a deficiency in petitioners' Federal income tax for the taxable calendar years 1972 and 1973 in the respective amounts of $2,461.82 and $2,524.02. The adjustments determined by respondent in his deficiency notice are for unreported tip ("toke") income received by petitioner, James Chapman (hereinafter called petition) in 1972 and 1973 in the amounts of $10,386.00 and $11,100.60, respectively. Petitioners timely filed their petition on July 12, 1977 and respondent filed his answer thereto on August 12, 1977. Thus, the pleadings are closed. Respondent's motion was filed more than 30 days after the pleadings were closed. See Rules 34, 36, 38, and 121. When respondent's good faith attempts to make arrangements with petitioners' counsel for informal consultations or communications *487 proved unsuccessful, [3] he, not desiring to rest on the pleadings alone, on July 16, 1982, served a 43 paragraph Request for Admissions on petitioners' counsel. [4] Petitioners' counsel at no time served written answers upon respondent nor did he file an original of such answers with the Court. Rule 90(c). Hence, each matter contained in respondent's request for admissions is deemed admitted and conclusively established. [5]
*488 The following findings of fact are based upon the record as a whole, the allegations of respondent's answer admitting allegations in the petition, the matters deemed admitted with respect to respondent's request for admissions, exhibits attached to respondent's motion and three affidavits. FINDINGS OF FACT Petitioners' resided at 3578 Homecrest, Las Vegas, Nevada on the date their petition was filed. They filed joint 1972 and 1973 Federal income tax returns with the Internal Revenue Service. During 1972 and 1973 petitioner was employed as a blackjack dealer at the Sands Hotel and Casino (hereinafter sometimes referred to as "the Casino"). His normal work shift constituted 8 hours per day and he was only required to work, by his employer, 5 days out of any consecutive 7 day period. His normal days off during this period were Wednesdays and Thursdays. In the course of his employment petitioner received tokes frm patrons of the Casino. In accordance with house rules these tokes were routinely pooled by petitioner and other blackjack dealers, roulette dealers, and Big Wheel dealers, by placing said tokes in a common toke box before leaving the area of the gaming tables *489 on a break or at the end of a shift. The total amount so pooled was divided at the end of each 24-hour period among the dealers on duty during that 24-hour period. These pooled tokes were divided on the basis of a full share to a dealer for each 8 hour shift. Dealers generally received their share of the pooled tokes in an envelope when they returned to work at the beginning of their next shift. Under house rules some provision was made for allowing a share of the tokes for dealers who were unable oo work because of illness. During 1972 and 1973 petitioner participated in and received his equal share of such pooled tokes. Petitioner, in 1972 and 1973 did not maintain a written diary, log, worksheet, or other record, made at or near the time he received tokes, which set forth the date, amount of tokes received and amounts he may have expended as gratuities to co-workers. Players (patrons) at the Casino did from time to time place bets on petitioner's behalf. Such bets remained under the control of the patron until the winnings, if any, were actually given to petitioner. The patron was free to take back the winning bet if he so desired. The Nevada State Gaming Authority regards *490 a bet made by a patron for petitioner as a wager made by and on behalf of the patron. Petitioner was forbidden from gambling or placing bets at the table he was working. Under house rules any winning bets received by petitioner were pooled and distributed. Neither petitioner nor the toke pool was required to reimburse a patron who had placed a losing bet on petitioner's behalf. In both 1972 and 1973 petitioner gambled in his individual and private capacity during his off duty time. He maintained no records which accurately reflected the date, amount of bets and amounts won and lost. Petitioner was paid a salary by his employer in both 1972 and 1973. The salary was in addition to the tokes he received in those years. In 1972 he was paid a salary for 247 8-hour shifts. He was paid for 8-hour shifts when he did not actually work; such shifts did not exceed 27 for 1972. [6] During 1973 he was paid a salary by his employer for 246 8-hour shifts, which included some shifts when he did not actually work; such shifts did not exceed 26 for 1973. [7] Petitioners reported the salary petitioner received from his employer on their 1972 and 1973 returns.
*491 Petitioner is required by law to report the toke income he receives to his employer. For 1972 and 1973 he reported to his employer that he received toke income in the respective amounts of $1,270.00 and $2,480.00.[8] In addition, petitioner reported toke income on the 1972 and 1973 returns in the respective amounts of $147.00 and $ 00.00. The amounts so reported to his employer and reported on the 1972 and 1973 returns were based on estimates and not upon any written records. No additional toke income was reported on those returns. The amount of toke income received by petitioner in 1972 average not less than $53.65 for each 8-hour shift he actually worked and for 1973 it averaged not less than $61.73 for each 8-hour shift actually worked.Petitioner received additional toke income in 1972 and 1973 in the respective amounts of 10,386.00 and $11,100.60, which was not reported on the joint Federal income tax returns filed for those years. Petitioners do not have knowledge of any material facts which would distinguish this case from those of petitioners, similarly *492 situated, in Williams v. Commissioner,T.C. Memo. 1980-494. Petitioners do not have in their possession or under their control any documentary evidence to support the allegations of their petition that respondent's determinations are arbitrary. OPINION It is well settled that tokes are not gifts but taxable income which must be included in a taxpayer's gross income. Olk v. United States,536 F.2d 876 (9th Cir. 1976); [9]Rodda v. Commissioner,T.C. Memo. 1983-244; Lazaroff v. Commissioner,T.C. Memo. 1983-243; Whitley v. Commissioner,T.C. Memo. 1983-226; Capri v. Commissioner,T.C. Memo. 1983-201; Clover v. Commissioner,T.C. Memo. 1983-181; Foreman v. Commissioner,T.C. Memo. 1983-130; Parker v. Commissioner,T.C. Memo. 1983-87; Kurimai v. Commissioner,T.C. Memo. 1983-86; Parker v. Commissioner,T.C. Memo. 1983-85; Randolph v. Commissioner,T.C. Memo. 1983-84; Owens v. Commissioner,T.C. Memo. 1983-30; Williams v. Commissioner,supra. *493 It is conclusively established in this record that petitioner received unreported toke income in 1972 and 1973 in the respective amounts of $10,386.00 and $11,100.60. Petitioners' contention that respondent's determinations are arbitrary is baseless. Here, petitioner kept no records which would accurately reflect the toke income which he received in 1972 and 1973. In such circumstance, the Commissioner may, in his notice of deficiency, make a determination based upon any reasonable method where a taxpayer refuses to produce his records or where those records are inadequately maintained. Holland v. United States,348 U.S. 121 (1954); Merritt v. Commissioner,301 F.2d 484, 486 (5th Cir. 1962); Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. in an unpublished opinion 559 F.2d 1207 (3rd Cir. 1977); Giddio v. Commissioner,54 T.C. 1530 (1970); Meneguzzo v. Commissioner,43 T.C. 824 (1965).[10]
*494 Respondent's determinations herein are presumptively correct and the burden is on petitioners to establish that they are incorrect or arbitrary. Welch v. Helvering,290 U.S. 111 (1933); Avery v. Commissioner,574 F.2d 467, 468 (9th Cir. 1978); Rule 142(a). Petitioners here totally failed to show that those determinations are incorrect or arbitrary. Rule 121(b) provides that a motion for summary judgment shall be granted if the "pleadings * * * admissions and any other acceptable materials, together with the affidavits * * * show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * *". [Emphasis supplied.] Here, petitioners have refused to submit any information which contradicts respondent's factual determinations. On the basis of the pleadings, those matters deemed admitted in respondent's request for admissions, the exhibits attached to respondent's motion (which include copies of the 1972 and 1973 returns and a full copy of the notice of deficiency) and respondents' affidavits, respondent has amply demonstrated to our satisfaction that there is no genuine issue *495 as to any material fact present in this record and, thus, that respondent is entitled to a decision as a matter of law. Hence, summary judgment is a proper procedure for disposition of this case.Respondent's Motion for Summary Judgment will be granted. An appropriate order and decision will be entered.
Footnotes
1. Since this is a pre-trial motion and there is no genuine issue of material fact, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule. The parties were afforded a full opportunity to present their views on the law at the hearing at Washington, D.C. on May 11, 1983. No appearance was made by or on behalf of petitioners nor was a response to respondent's motion filed, albeit a copy thereof and a copy of respondent's affidavits together with a copy of the Court's Notice of Hearing were served on petitioners' counsel by the Court on March 31, 1983. See Rule 50(c), Tax Court Rules of Practice and Procedure.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. See Odend'hal v. Commissioner,75 T.C. 400↩ (1980); Rule 90(a). 4. The original of that request was filed with the Court on July 19, 1982. Rule 90(b). ↩
5. See Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978); Rules 90(c) and (e). See also McKinnon v. Commissioner,T.C. Memo. 1982-229; Knudson v. Commissioner,T.C. Memo. 1982-179; Oaks v. Commissioner,T.C. Memo. 1981-605; Wallace v. Commissioner,T.C. Memo. 1981-274; Myers v. Commissioner,T.C. Memo. 1980-549; Edelson v. Commissioner,T.C. Memo. 1979-431; Saba v. Commissioner,T.C. Memo. 1979-397; Bassett v. Commissioner,T.C. Memo. 1979-14↩.
6. The 27 shifts were not included in respondent's determination of additional toke income received by petitioner in 1972. ↩
7. The 26 shifts were likewise not included in respondent's determination of additional toke income received by petitioner in 1973.↩
8. Said amounts were reflected on Forms W-2 issued by petitioner's employer, and were included in gross wages.↩
9. We observe that venue on appeal of this case would lie in the United States Court of Appeals for the Ninth Circuit.↩
10. The method used here by respondent was clearly reasonable. See Williams v. Commissioner,T.C. Memo. 1980-494↩, where on facts virtually indistinguishable from those we consider herein, this Court stated--"We conclude that 'all tokes' received by petitioners, whether directly from the player or through a winning bet, are taxable gratuities".