LEROY E. NICHOLS AND MILDRED M. NICHOLS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Nichols v. Commissioner
Docket Nos. 12773-79, 16563-79, 16572-79, 136-80.
United States Tax Court
T.C. Memo 1983-242; 1983 Tax Ct. Memo LEXIS 542; 46 T.C.M. (CCH) 21; T.C.M. (RIA) 83242; May 3, 1983. Leroy E. Nichols, Michael D'Errico, and Nello Dave Petrichella, pro se. Gail K. Gibson, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Chief Judge:* Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Addition
Docket
Income tax
to tax
No.
Year
deficiency
(Sec. 6653(a)) [2]
Leroy E. Nichols
12773-79
1976
$667.00
$33.00
and Mildred M.
16563-79
1977
623.00
31.15
Nichols
Michael D'Errico
16572-79
1977
399.00
19.95
Nello Dave
136.80
1977
332.00
16.60
Petrichella
*543 The issues for decision are: (1) whether petitioners Leroy E. Nichols, Michael D'Errico, and Nello Dave Petrichella understated their respective tip incomes; (2) whether the petitioners are liable for additions to tax for negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. All four petitioners resided in Las Vegas, Nev., when their petitions were filed with the Court. At all times pertinent herein, petitioners Leroy E. Nichols, Michael D'Errico, and Nello Dave Petrichella (hereinafter collectively referred to as the petitioners) were employed as taxicab drivers in Las Vegas, Nev. Mr. Nichols and Mr. D'Errico were employed by Yellow Cab Company; Mr. Petrichella was employed by Whittlesea Bell Cab Company. Each cab company required its drivers to maintain daily "trip sheets" listing the details of each trip. Total gross *544 fares, as reflected on the trip sheets, were paid over to the companies. Petitioners received as wages 50 percent of adjusted gross fares (total gross fares less various state and local taxes). Each petitioner was entitled to keep all tips he received from his customers. [3] None of the petitioners reported all of its tips. See pp. 5-7 infra. Mr Nichols reported no tips on his 1976 and 1977 tax returns. Mr. D'Errico and Mr. Petrichella reported $1,015.00 and $794.40 in tips on their respective 1977 tax returns. Furthermore, none of the petitioners kept adequate tip records. Mr Nichols never presented a tip record that he allegedly kept. The records kept by Mr. D'Errico and Mr. Petrichella do not clearly reflect income. See pp. 5-6, infra.
During 1978, respondent's agents sought to determine the average tip income for Las Vegas area cab drivers for 1977. The trip sheets of all the cab companies operating in the area and 381 income tax returns filed by drivers employed by those companies were examined. [4] Respondent concluded from this examination that Las Vegas area cab drivers received tips equal to at *545 least 15 percent of their gross fares. [5]
Respondent redetermined each petitioner's tip income to be 15 percent of his annual gross fares and calculated deficiencies accordingly. OPINION We must first decide how much tip income each petitioner received for the year(s) in question. Tips are, of course, includable in gross income. Olk v. United States,536 F.2d 876 (9th Cir. 1976); Cracchiola v. Commissioner,643 F.2d 1383 (9th Cir. 1981), affg. a Memorandum Opinion of this Court. If a taxpayer fails to keep records of tips received or if the records kept do not clearly reflect income, respondent may reconstruct the taxpayer's income. Mendelson v. Commissioner,305 F.2d 519 (7th Cir. 1962), *546 affg. a Memorandum Opinion of this Court; Sutherland v. Commissioner,32 T.C. 862 (1959). The burden is on each petitioner to establish that respondent's determination in respect to him is incorrect or arbitrary. Rule 142(a); Meneguzzo v. Commissioner,43 T.C. 824, 834 (1956); Roberts v. Commissioner,10 T.C. 581 (1948), affd. 176 F.2d 221 (9th Cir. 1949). Mr. Nichols reported no tip income on his 1976 and 1977 income tax returns. Mr. Nichols testified that he included his tips in his daily fares (so that his tips were reflected on his trip sheet) and thereby included his tips in his wages. We do not believe that Mr. Nichols combined his tips and daily fares, since he, as an experienced cab driver, was obviously aware that if he reported his tip income in this manner, his employer would have received 50 percent of his tips. [6]
*547 Mr D'Errico reported tip income for 1977 equal to 4.9 percent of his annual gross fares. Mr. D'Errico presented records which purported to reflect the tips he received for the first 11 months of 1977. We conclude that these records do not accurately reflect his true daily tips for two reasons. First, Mr. D'Errico's daily tips, as reflected by his tip records, bear absolutely no correlation to daily gross fares collected. [7] Second, Mr. D'Errico offered no explanation why his percentage of tips to fares was less than one-third of the area "average." Consequently, we find Mr. D'Errico's records insufficient to carry his burden of proof. *548 Mr. Petrichella reported tip income for 1977 equal to 5.1 percent of his annual total gross fares. Mr. Petrichella kept no daily record of tips; he determined his 1977 tip income by placing his tips in a "tip jar" which he kept at his residence and counting the money once a month. This evidence is not sufficient to carry petitioner's burden of proof for two reasons. First, we simply cannot believe that a portion of that cash was not spent each month before it was counted. See cases cited at n. 6, supra. Second, Mr. Petrichella offered no explanation why his percentage of tips to fares was approximately one-third of the area "average." We conclude, therefore, that each of the petitioners underreported his income, [8] failed to keep adequate records, and failed to carry his burden of showing that respondent's determinations based upon the survey were erroneous or arbitrary. Irby v. Commissioner,T.C. Memo. 1981-399; Bell v. Commissioner,T.C. Memo. 1980-467.Cf. Cracchiola v. Commissioner,supra. See also, Anson v. Commissioner,328 F.2d 703 (10th Cir. 1964), affg. a Memorandum Opinion of this Court; *549 Davies v. Commissioner,T.C. Memo. 1981-438. A taxpayer who fails to keep adequate records of his income "assume[s] the hazard that [he] may be called upon to pay a tax based on an income which cannot be determined to a certainty." Mendelson v. Commissioner,supra at 523. We must next determine whether petitioners are liable for additions to tax under section 6653(a) because any part of their respective underpayments was due to negligence or intentional disregard of rules and regulations. The additions to tax are based on each petitioner's failure to maintain adequate records. See section 6001 and section 1.6001-1, Income Tax Regs. Each petitioner carries the burden of proof on this issue. Rule 142(a); Mendelson v. Commissioner,supra;Sutherland v. Commissioner,supra at 869. *550 None of the petitioners has established non-negligence. [9]
Decisions will be entered for the respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Leroy E. Nichols and Mildred M. Nichols, docket No. 16563-79; Michael D'Errico, docket No. 16572-79; Nello Dave Petrichella, docket No. 136-80.↩
*. These cases were tried before Judge Cynthia Holcomb Hall, who subsequently resigned from the Court. By order, they were reassigned to Chief Judge Theodore Tannenwald, Jr.↩, for disposition.
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Tips were not required to be included in gross fares.↩
4. Of the 381 returns analyzed, 130 reported no tip income. The remaining cab drivers reported tip income ranging from 15 to 19 percent of gross fares. ↩
5. A similar Internal Revenue Service study for the Las Vegas area conducted in 1975 for the years 1973 and 1974 reached the same conclusion. Other Internal Revenue Service studies revealed a 12-percent tip figure for San Francisco cab drivers and a 15-percent tip figure for Anchorage cab drivers.↩
6. We are not required to accept Mr. Nichols' testimony as gospel. Factor v. Commissioner,281 F.2d 100, 111 (9th Cir. 1960), affg. a Memorandum Opinion of this Court. See also Avery v. Commissioner,574 F.2d 467↩ (9th Cir. 1978), affg. a Memorandum Opinion of this Court.
7. While Mr. D'Errico's gross fares varied considerably from day to day, his tip records show relatively constant tips. The following chart, which compares tips reported for each month's lowest and highest fare days, illustrates the unbelievable "consistency" of petitioner's tips: ↩
Lowest
Tips
Highest
Tips
fares
reported
fares
reported
January
$45.10
$3.65
$88.80
$4.10
February
56.90
2.10
111.00
4.10
March
28.00
3.00
98.80
3.95
April
52.20
3.10
83.50
3.55
May
52.20
3.80
104.90
4.20
June
38.80
3.60
76.10
4.55
July
51.30
3.30
76.30
4.95
August
62.40
3.15
87.90
3.60
September
51.70
3.00
89.00
3.25
October
66.20
3.00
103.70
4.00
November
1.50
.15
103.10
4.00
December
28.90
No tip
93.70
No tip
record
record
8. The record in this case provides no support for petitioners' contentions that their customers tipped significantly less than the customers of the average Las Vegas cab driver. Indeed, Mr. Nichols told one of respondent's auditors that he received tips of $20 per day, which would have equaled, for Mr. Nichols, a tipping rate in excess of 20 per cent of gross fares.↩
9. We recognize that Mr. Petrichella testified that he kept daily records until, he claims, the Internal Revenue Service told him that was not necessary. This statement is directly refuted by Mr. Petrichella's statement, made at the time he was purportedly told that daily records were not needed, that "I go home and I throw my money in a jar and I count it out at the end of the month. That's very simple. Very simple. That's not hard to figure out. That's exactly the words I told them." Mr. Petrichella's testimony does not, therefore, rebut the finding of negligence.↩